Panel this morning, and when we've finished with that case, we'll recess and the panel will be reconstituted. And that case is number 14-50-15, Shinnecock Indian Nation v. United States, Mr. Baek-San. Is that how you pronounce it? Okay, you may proceed. Thank you, Your Honor. Your Honors, my name is Stephen Lawson. I am appearing here this morning on behalf of my client, the Appellant and Plaintiff, Shinnecock Indian Nation. May it please the Court. Could you tell us what is going on with the appeal in the Second Circuit? Yes, Your Honor. Has that started to move forward now? Yes, Your Honor. The appeals have been constituted. The initial appeal back in 2006 was a protective appeal because of an interaction of District Court and Appellate rules. The true appeal, if you will, was filed several months ago. Our opening brief is due March 5th. And that was being held up in part because of something that was happening at the Interior Department, is that right? There were some post-judgment motions, 59E motions, but as I indicated, because of the interaction between local practices and the Appellate rules, it was necessary to file the initial appeal and then have it stayed. Well, I understand that, but what was happening at the Interior Department? Interior Department? Am I misunderstanding? No, it has nothing to do with what was going on in the Interior Department, Your Honor. Oh, okay. What it had to do with is that there remained a, well, strike that. It did in a roundabout way. The Nation had a motion for leave to amend the complaint that was still pending before the Court. The Nation withdrew that at the end of October of last year, 2014. One of the reasons that it continued to be stayed, that motion, is that the tribe was attempting to get the United States to come in on behalf of the Nation under its trust responsibility. The United States had only begun to actually actively acknowledge its trust responsibility once the Shinnecock Indian Nation had been federally recognized at the end of 2010. So is the United States filing a brief in the Second Circuit? Not that I'm aware of. The United States declined to make a decision on whether it would or would not come in in the District Court in this matter. Rather than bring suit against the United States, which was the Nation's right, but nonetheless, rather than do that, we elected to simply withdraw our motion for leave to amend, bring it later as an independent new cause of action, if necessary, what we proposed to bring as an amended complaint, and proceed with the appeal. Okay. Why don't you go ahead with this case? Thank you, Your Honor. As Your Honors are aware, in 2005, a three-judge panel of the United States Court of Appeals for the Second Circuit announced a fundamentally new rule of law applicable to Indian land claims, what were called ancient Indian land claims. Now these are basically claims that accrued in the late 1800s to early 1800s. That new rule barred ancient Indian land claims brought under the Federal Non-Indian Intercourse Act, and they were barred by the passage of time and the natural consequences of that passage of time. The following year, in December of 2006, the U.S. District Court for the Eastern District of New York dismissed the Shinnecock Indian Nation's land claim based on the Non-Indian Intercourse Act, based on this ruling of the Second Circuit Court of Appeals from 2005. Well, you have this theory that somehow the District Court reached a trust obligation under the Non-Indian Intercourse Act, which gives rise to this cause of action. Well, that is true, Your Honor, but if I might. Our view is that, first off, there is only one case or controversy. What we've expressed in the complaint and in the brief are three separate legal theories for recovery. Our view is that viewing the nation's claims through the vantage or the context of taking jurisprudence provides the best analytical structure to analyze the Shinnecock Indian Nation's claims in this case, because there is existing case law that answers the various questions that have been put forth by the United States, such as who can affect a taking, when does the cause of action accrue for such a taking, and whether it's ripe. While it is true that there is considerable Indian trust precedent in this court, in the U.S. Supreme Court, it basically does not go to the question of when a cause of action accrues, who is it that can be responsible for taking that action for a cause to accrue. We have a whole series of cases saying you can't bring a takings claim in the Court of Federal Claims based on the action of another federal court. How do you get around that? Well, Your Honor, you also have jurisprudence that indicates that such claims do accrue and that they can be brought. I think that the distinction, the cases... Which cases are those? Pardon? Which cases are those? I think that the most important cases, in particular, involving... The one case involving an Indian land claim case is the case involving the Catawba Indian tribe of South Carolina versus the United States. That is cited in our brief. In that case, as Your Honors are aware, Congress had announced the new rule of law that had made applicable the adverse possession law in the state of South Carolina. That then was applied to an existing Non-Intercourse Act land claim that the tribe had. It basically, ten years following the enactment of the congressional legislation, the statutory prescriptive period under South Carolina had accrued. No one knew at the time for sure that South Carolina applied as a result of the congressional legislation. That case then went to the U.S. District Court where the tribe brought its claim. At which point it was dismissed based upon the application of South Carolina law as a result of this change in law by Congress. It went to the Fourth Circuit Court of Appeals and to the U.S. Supreme Court. Thereafter, the tribe, once it was clear, having gone to the U.S. Supreme Court, that application of this rule of law and the decision that it did apply to borrow the tribe's land claim by the District Court and having been upheld by the Supreme Court, the tribe brought a takings claim. But that wasn't based on the action of the court. In fact, based on the action of Congress, right? Well, that's correct, but what I wanted to emphasize, Your Honor, is that in the context of when it accrued, there were alternative accrual dates and alternative dates upon which the statute of limitations, which eventually barred the claim, this court held to have accrued. And one of those was, assuming that there had been equitable tolling because it was undoable, what the effect of that congressional legislation was making applicable a new rule of law, this court held that it would have accrued at the time of the dismissal of the Indian Non-Intercourse Act land claim by the District Court. In addition, I think that the logic of taking cases, which is always emphasized with respect to the other branches of government, that it matters not who it is that affects an inverse condemnation type taking, but rather what the effect of the authorized action by a government official is on the property rights of the plaintiff at issue that is the deciding factor. There should be no difference between a court and the executive branch in this regard. Neither has the authority to directly condemn property. The executive, occasionally, when he's authorized by Congress or his agencies are. But if authorized action by an executive agency or official results in an adverse impact sufficient on protected vested property interests, it's the consequence that drives whether a taking has occurred or not, not who has done it, and not whether they're authorized to engage in condemnatory action. Now, it is true that this court has indicated that it could not review what, and the Court of Federal Claims has indicated that it could not review what other federal courts have done. But it's also true in the Boise Cascade case, which has been cited in our briefs, that this court explained what it meant to not be able to review or to be able to review. And what it was speaking of is that this court, or the Court of Federal Claims, doesn't have authority to sit in direct review of what another federal court does. But it doesn't mean that it cannot determine whether what that court has done, and Boise Cascade doesn't speak to whether it's a court or not, but whether it's an agency, whether the effect of what it has done has constituted a taking. Now, I would cite, Your Honors, to two other cases, one of which was not cited in the brief, but is an underlying case for cases that are cited in the brief, which are the rails-to-trails cases. In the original rails-to-trails case in Prezzo v. Interstate Commerce Commission, the United States Supreme Court indicated that, with respect to an agency, the ICC, which had no authority to condemn, when it took an action that adversely affected property rights, affected a taking under the Rails-to-Trails Act. Now, it didn't have to always constitute a taking. Congress did not say go out and condemn. And the ICC had no authority to condemn. It had rules. Direct appeal from that decision went to the same Second Circuit Court of Appeals as from the district court in our case. It then went to the U.S. Supreme Court, which had ruled that while Congress, under the Rails-to-Trails Act, had exercised its commerce authority lawfully, that if the alleged effect of the exercise of that authority by an official authorized by Congress to do so was to affect a taking of property, that it was premature to take that to the Court of Appeals. The proper course, it said, was to take that to the Court of Federal Claims, which, in fact, the plaintiffs in that case did. And this court, a few years later, in Prezzo v. United States, which is cited in our brief, ruled that, in fact, a taking had occurred. But only by the time it got to this panel en banc did the full court realize that, in fact, a taking had occurred and was in the jurisdiction of this court. Now, I would suggest, Your Honor, that whether it is a court that makes a decision or an executive agency who is making an adjudicated decision, appeal from each of which lies to the Second Circuit Court of Appeals and then to the U.S. Supreme Court on certiorari, it makes no difference whether the decision that applies the rule of law that it itself did not make affects a taking or has the effect on property rights that, if affected by anyone else, Congress or the executive, that it would, in fact, be a taking. Now, in this case... But your whole theory is that the taking occurred because the district court rendered an incorrect decision. No, not at all, Your Honor, not at all. On the contrary, we think that the district court was bound to rule as it did. And it's not a question of whether it made a mistake or not. We're not saying that any court made a mistake. What we're saying is that if Congress... The Second Circuit's rule, right? Well, I think that they're wrong, Your Honor, but that's not the point because it's not relevant to whether the new rule of law was announced. The question is, did it announce a new rule of law? I think, unequivocally, the answer is yes. If Congress had done what the Second Circuit did... The Second Circuit and the district court have said you don't have a property claim. You don't have any cause of action here. And you're saying, in the takings case, that we did have a cause of action that was taken away from us by the ruling that we didn't have a claim. That's basically your theory, isn't it? Well, Your Honor, even the Second Circuit never indicated that these cases weren't otherwise valid other than the new rule of law. But isn't that your theory, that you had a cause of action here that was taken away by the district court and the Second Circuit, right? Correct. So in order for us to decide that you had a property right that was taken, we'd have to disagree with them and say, yes, you did have a... No, not at all. Neither court had indicated that we didn't have a cause of action, but they held us that it was barred. Let me suggest that if Congress had announced the rule of law that the Second Circuit did and the district court were to have applied it, it would have been a taking. Even Congress, notwithstanding what the United States argues, cannot impose a statute of limitations to time bar a claim for the compensation for the taking of an interest in land and have it apply immediately without a fair chance for someone to actually bring a claim before that statute runs. You're not saying that Congress couldn't have a statute of limitations on these claims. Congress, in fact, has a statute of limitations on these claims, and in fact our claim is within that statute prescribed by Congress. That is one of the reasons that it's an entirely new rule of law. A statute of limitations doesn't have any limit on it. Well, that's not quite true, but the... What would happen if Congress had, at some point in time, imposed a clear statute of limitations, six years, on your cause of action? Well, the point is that it would be six years from... No, but it would be six years from the time that the statute took effect. In this case, what we're talking about is if Congress passed a claim, a statute of limitations, and said that all claims under the Indian Non-Intercourse Act that arise a hundred years ago, including ones that are pending in a district court right now, are hereby barred by the passage of time. That, when applied to a cause of action, would constitute a taking, yes. And it would command just compensation. And we cite, if I recall, for that result, on page five of our reply brief, we cite a Rivers versus something... I can't remember the case, I'm sorry. But we do cite a U.S. Supreme Court authority for that proposition on page five of our reply brief. I'll come up with it later if I have a chance to... Okay, Mr. Blackcomb, if you're out of time, we'll give you two minutes for a rebuttal. Thank you. Ms. Schelling? Good morning. May it please the Court. I'm Jennifer Newman from the United States. I'm sorry, I was in the middle. That's okay. That's two names. It makes it easy to get confused. The Court of Federal Claims properly dismissed the nation's breach of trust claims here, both because the Court had no jurisdiction over them under the Indian Tucker Act and because those claims were not right. The Court was also correct in denying the nation the permission to amend their complaint to add a judicial takings claim. Now, given that the nation focused on the judicial takings issue, I'd like to begin there. But, of course, if the Court has any questions about the other issues, I would be happy to answer them or even start there. Their theory seems to be that if Congress had enacted the Latches Rule that was applied by the Second Circuit, that that would be a taking and that when that rule was judicially created, it had the same effect, right? Yes, that is their theory. Do you want to address that? Of course. So, as sort of a threshold matter, the CFC did not address whether a digital takings claim would be right, but, of course, here the nation had not exhausted its direct review in the Courts of Appeals. And so, for that reason alone, it would have been proper to refuse their request to amend the complaint because the claim simply was not right. But on the substance of the claim, there are two problems with their theory. The first one is that they do not have a property interest in their cause of action because their cause of action has not yet vested. The second problem is that they're alleging that the action of the government that took their property interest was this decision by the Eastern District of New York. And this court has a long line of cases that say that the Court of Federal Claims does not have jurisdiction here, claims that challenge the correctness of the holding of the district court in another case. I don't think you're answering the question of resigning Judge Pucci, which is, if Congress had enacted the last rule, would that have been a taking? We made an argument in our brief that that would not have been a taking, that Congress can, in fact, change the rule of law in the middle of the case. Remind me what that argument is, please. Sure. Basically that Congress has plenary authority to change the cause of action and change all sorts of rules in the middle of a case, and those rules apply immediately. The nation has cited some cases to the contrary that seem to indicate that, no, in fact, Congress would have to give a reasonable amount of time for claimants to bring their claims if it were shortening the cause of action. This court does not need to address that question because there are several other reasons why such a claim would fail. So to the extent that it's messy, you don't need to address it. And those other reasons are apart from rightness. Apart from rightness, that there is no vested property interest yet in the nation's claims because their cause of action against the State of New York has not been reduced to final judgment, so their property interest in their claim has not vested. I don't understand that. I mean, if somebody has a claim and it's wiped out, why isn't that wiping out property? The reason is, I think it basically comes down to that property interest is too uncertain. That's rightness, right? What's the difference between that and rightness? The rightness argument that I'm making is a little bit different than that. I suppose you could put rightness labor. What is a rightness consideration? I suppose it could be put in that box, but I think it makes more sense. The presiding judge was asking you what issues aside from rightness. Well, I thought that he was asking aside from the rightness argument that I had articulated, which was that in this particular case, the nation's claims, it has claims. It's alleging that the Second Circuit precedent on latches is incorrect. The subject of the timing issue you're talking about is also a rightness issue. What else? Move on to the next point. The next point is that the Court of Federal Claims does not have jurisdiction over claims challenging a decision of another federal district court. That's on the Armani of Case Law. That's correct. That's the Aluciarte in that line of cases. It's quite clear that it's simply not within the jurisdiction of the Court of Federal Claims. Whether or not you could conceive of what happened... Are those anonymous bank decisions? I don't think so, no. But, of course, this panel would be bound by those regardless. And so given that even if you could conceive of what the nation is complaining of as a takings claim, the jurisdiction is not proper in the Court of Federal Claims because it would require review of the decision of the Eastern District of New York. But if a congressional enactment of a laches rule would be a taking, let's assume that hypothetically. I understand that you don't agree with that and you say there's authority on both sides. Why wouldn't a judicial creation of a laches doctrine have the same effect? The... I think the best way to think about it is what the nation is asking for is something that is really unprecedented in the federal courts. To say that an action of a court as opposed to the executive or Congress could constitute a taking. And the reason for that is traditionally we conceive of the courts as the branch of government that declares what the law is, not a body that creates law, that prescribes new law. So the theory is that the laches limitation was always inherent in the cause of action and it isn't creating a new limitation. Essentially, yes. To the extent that the tribe had a property interest in their cause of action, it was always subject to limitations such as laches or other equitable or common law doctrines that courts have always applied to these sorts of claims. Now, if you get into the question of whether or not the Second Circuit and the Eastern District of New York essentially created a new rule, then that brings you to reviewing the decision of those courts, which is something that this court has said repeatedly the Court of Federal Claims does not have authority to do. Another way to think about it, I don't believe counsel for the tribe discussed the Stop the Beach re-nourishment case from the Supreme Court where four justices suggested that there could be such thing as additional taking. But even those four justices would not have said that the proper course was to go to the Court of Federal Claims or in that case a state tribunal and bring a separate takings claim, which is what the tribe has attempted to do here. But instead it would be to make the argument on direct review that the rule of law announced by the state court was a taking of a property interest. And so, even there, that can't... Is the distinction without a difference? Whether you mount your challenge through the direct review in the Second Circuit or whether you mount the challenge by bringing the Court of Federal Claims takings case? I think it makes a great deal of difference because if the four justices in Stop the Beach who would have recognized additional takings claim theory, if they were correct, what they would have said should have happened is that the decision of the Supreme Court of Florida should have been reversed. Not in that case. The whole subject of possibly bringing a takings case in the Court of Federal Claims wasn't on the table, was it? No. Supreme Court justices who thought there might be such a taking claim didn't say, oh yeah, and by the way, there is no such takings claim by going directly to the Court of Federal Claims. Well, certainly there it was the state that was alleged to have taken it. But they did not suggest that the proper course was to go into the state court system, whatever their equivalent of the CFC might be, and allege a takings claim and try to get money damages for the change in the rule of law. And so, to the extent that that authority is something that we're thinking about... It's not like I'm not going to sue the federal government in the state court, right? No, no, no. But the parallel would be that they would sue, as they have done, sue the government in the CFC. Right? It's a question of... Those two cases are a little bit difficult to think about because you have one case being a state court system that was alleged to have done the taking, and here is the federal court system. So the question is, where should that claim go? The Stop the Beach plurality suggested that it should go up through the direct review process, in that case, all the way to the state court. So you're saying they should have argued, or they should argue in the district court case in New York, that the latches limitation is unconstitutional because it amounts to a taking. Certainly that's what the Stop the Beach plurality would suggest that they do, rather than bringing a separate claim for takings by a court. Unless there are more questions... Interesting twist. I mean, because ordinarily, you know, when you're arguing something as a takings, you don't have to say what the Corps of Engineers did was unconstitutional. Or you can't defeat what the Corps of Engineers did by claiming that it's a taking. That is correct. It is, in fact, a very strange way to look at takings jurisprudence, and I think that... And only four people, four justices, have said they might, on some nice spring day, look at things that way. That is correct. But, of course, the other justices of the court didn't even suggest that there could be such a thing as a judicial taking, which isn't... To my research and knowledge, no court has ever held that the judicial branch could affect the taking. Stop the Beach is sort of as close as we've come, and I think that the difficulty that you identified comes from the sort of mental knots you would have to twist yourself into to try to conceive of what a proper judicial takings claim could be if there were, in fact, such a thing. However, I think that really what this comes down to is the CFC would have to review the judgment of the District Court for the Eastern District of New York if it were to hear the nation's... I'm not sure that's true, because they say we have no problem in deferred federal claims with that ruling, but to the extent that it was correct, it eliminated our cause of action based on latches, and that's the same as though Congress had stepped in and eliminated our cause of action based on latches. So they're not saying the decision was wrong. They're saying that it was arguably correct, but that that results in a taking, which is not uncommon when you're talking about legislation. You first determine that the legislation had the claimed effect, and then if it did, then you bring a takings file. Right, but Your Honor, even you yourself said it. If that decision was correct, that is what the CFC would have to be reviewing. Was that a departure from previous precedent to say that latches applied in this sort of situation? That's exactly the question that the CFC would have to look at, and that is just what this Court has said. It does not have jurisdiction to do. It's to review the correctness of those decisions of other district courts or other courts in the United States. And so for that reason, I think that the CFC was absolutely proper in denying the request to amend the complaint. With respect to the other claims, I'd like to speak first to the Indian Tucker Act because the tribe made an argument in their brief that their claims should have been dismissed without prejudice. The dismissal with prejudice was proper because the Indian Tucker Act goes to the jurisdiction of the Court of Federal Claims, and it lacked jurisdiction under that act. And it lacked jurisdiction for two reasons. First, there's nothing in either the Non-Intercourse Act or in federal common law that imposes a specific fiduciary duty on the courts of the United States, makes them fiduciaries to tribes. As opposed to the executive. Certainly, as distinct from the executive, we would argue that there's also no fiduciary duty of the kind required by the Indian Tucker Act on the executive either, but this court obviously doesn't need to reach that question because that's not the tribe's theory. Their theory is that the courts owed them a fiduciary duty to hear their claims on the merits. But the Indian Tucker Act does not set forth such a specific fiduciary duty, nor does it indicate that if such duty existed that it would be money mandating. And for those two reasons, there's no jurisdiction under the Indian Tucker Act. In addition, those two claims are also not ripe because as I indicated, of course, the tribe still has an ongoing appeal process in the Second Circuit. It could also seek review from the Supreme Court. Until those actions are completed, it would be unknown whether it would ever be necessary for the Court of Federal Claims to get involved in frankly any of the claims that the tribe has asserted because it could very well be that the Second Circuit will decide to abandon the laches doctrine that they have set forth in their prior cases. There's a lot of the underlying drivers in the ripeness doctrine that the Constitution doesn't want us giving advisory opinions. Yes. Well, why doesn't that ripeness consideration go to both of the trust theories here? You say we should reach the merits? I'm saying that you could reach the merits because both of those... But then in the next breath, you tell us that those two things are not ripe because events could occur in the Second Circuit that make the controversy go away. Certainly the CFC could have stopped after addressing ripeness or it could have addressed the Indian Tucker Act argument first and then stopped. Because they're both jurisdictional. Correct. They're both jurisdictional. I see my time is up unless there are further questions. Okay. Thank you, Ms. Newman. Mr. Block, some of you have... Thank you, Your Honor. Your Honor, the case I was referring to that I couldn't remember the name of on page five of our reply brief is Rivers v. Roadway Express, U.S. Supreme Court, cited in the brief. Let me also address the question of whether a cause of action for the taking of compensation for the taking of land as property, this Court and others have held that it absolutely is. We would cite and have cited Alliance of Descendants, also Catawba Indian Tribe v. United States, both of which are Federal Circuit cases, cited in our briefs. I would also cite Shanghai Power Company v. United States for Claims Court 237 and 241, not binding on this Court, but nevertheless, I think, good precedent. There are others as well, but those are the ones that we have cited. With respect to this laches rule, it was, in fact, akin to a statute of limitations, although the Court called it laches. It claimed that it was applying an equitable defense doctrine that the U.S. Supreme Court, earlier in the City of Sherrill case, earlier that year, had announced. Subsequently, in Petraea v. MGM, which we cite on page 6 of our reply brief, the U.S. Supreme Court has completely denied that it ever created or authorized or has approved or upheld any rule of law that a cause of action can simply be eliminated at the outset, at the motion-to-dismiss stage, on the basis of an equitable doctrine. Relief might be able to be, but the cause of action, if it's within the congressionally prescribed statute of limitations, absolutely cannot be from the U.S. Supreme Court's point of view. The point I'm getting at is that this Court, the Court of Federal Claims, did not have to sit in direct review. It did have to do one thing, and that was determine whether a new rule of law had been created. I would suggest that that is no more difficult nor unusual than to determine whether Congress has created a new rule of law or whether an executive agency has created a new rule of law. Okay, thank you, Mr. Locks, and we're out of time. The case is submitted. We thank both counsel, and the Court will recess for a brief period. Thank you, Your Honor. All rise. The Court will take a short recess. Thank you.